UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH HUGHES, | ) | CASE NO. 1:04CV593 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| JAMES HAVILAND, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon the Magistrate Judge's Report and Recommendation (ECF DKT # 15) regarding Petitioner Kenneth Hughes' ("Hughes") Petition for Writ of Habeas Corpus (ECF DKT # 1) pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Magistrate Judge's Report and Recommendation is ADOPTED and Petitioner's Petition for Writ of Habeas Corpus is DENIED.

**FACTUAL BACKGROUND**

Petitioner Kenneth Hughes ("Hughes") shot and killed two men, Rayshawn Lindsay ("Lindsay") and Horace Roberson ("Roberson") on November 3, 2000, in the Mirage nightclub parking lot in Cleveland, Ohio. These killings occurred in an attempt to shoot Marquese Bryant ("Bryant"). Bryant and Hughes had a previous altercation several minutes before the shootings, in which Hughes drew his gun, put it to Bryant's chest and pulled the trigger; but the gun failed

1

to discharge. Bryant ran and, in the meantime, Hughes fixed his gun and started looking for Bryant in the parking lot. When he found him, he fired nine shots in Bryant's direction, killing Lindsay and Roberson.

On November, 8, 2000, the Cuyahoga County Grand Jury indicted Hughes on two counts of Aggravated Murder with Mass Murder and Firearm Specifications, one count of Attempted Aggravated Murder with Firearm Specifications, one count of Having a Weapon While Under a Disability, another count of Having a Weapon While Under a Disability with Firearm Specifications, and two counts of Carrying a Concealed Weapon. Hughes pled not guilty to all charges.

During jury selection for his trial, Hughes changed his plea to guilty, and he signed a voluntary waiver of jury trial on May 14, 2001. In return for his guilty plea, the prosecution agreed to withdraw its request for the death penalty and drop all charges except for the first count of Aggravated Murder with Mass Murder and Firearm Specifications and the second count of Aggravated Murder with a Mass Murder Specification. In accordance with O.R.C. § 2945.06, the Court of Common Pleas referred the matter to a three-judge panel for the purposes of determining whether Hughes committed the crimes to which he pled and for pronouncing sentence.

On May 29, 2001, Hughes was sentenced to consecutive terms of thirty years to life for each count of Aggravated Murder with a Mass Murder Specification and to an additional three years for a Firearm Specification, also to be served consecutively, for a total of sixty-three years to life.

On March 15, 2002, Hughes filed a Notice of Appeal and Motion for Leave to Appeal in

the State Appellate Court. The court granted the motion on April 12, 2002, and on January 16, 2003, the Appellate Court announced that it found Hughes' three claims to be without merit and affirmed the Trial Court's decision. Hughes then filed a Motion to Reconsider his second assignment of error, to wit; his guilty plea was not knowingly, intelligently and voluntarily entered. He presented the same arguments in his previous brief and, on February 13, 2003, the Appellate Court summarily denied his motion and affirmed its previous decision.

On March 24, 2003, Hughes filed a timely appeal with the Ohio Supreme Court with the same three claims. On June 11, 2003, the Ohio Supreme Court denied Hughes leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On March 26, 2004, Hughes filed a timely Petition for Writ of Habeas Corpus with this Court, asserting the same three errors as before. The Magistrate Judge issued her Report and Recommendation on July 13, 2004, recommending this Court deny Hughes' Petition.

On August 13, 2004, after his Motion for an Enlargement of Time was granted, Hughes timely filed Objections and Exceptions to the Report and Recommended Decision of the Magistrate Judge.

## LAW AND ANALYSIS

### I. Standard of Review

A District Judge shall make a *de novo* determination of those portions of the Magistrate's Report and Recommendation to which objection is made. 28 U.S.C. § 636(b)(1). A District Judge may accept, reject, or modify, in whole or in part, the recommendations made by the Magistrate Judge. *Id.* "Any party that desires plenary consideration by the Article III judge...need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Hughes timely filed his Objections and

3

Exceptions, so he is entitled to a *de novo* review of the Magistrate Judge's recommendations.

**II.    Pertinent Sixth Circuit U.S.C. Rulings**

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court recently interpreted this section. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgement that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

That same year, the Sixth Circuit Court of Appeals followed *Williams*, stating, "even if we believe that a state court incorrectly applied federal law, we must refuse to issue the writ of habeas corpus if we find that the state court's decision was a reasonable one." *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

**III.   Presumption and Burden**

28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person

4

> in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

This section has been cited time and again by the Sixth Circuit since the section's inception in 1996, and is routinely followed as expressly written. *See, e.g., Sinkfield v. Brigand,* 487 F.3d 1013, 1016 (6th Cir. 2007); *Haliym v. Mitchell*, 492 F.3d 680, 690 (6th Cir. 2007); *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006).

**IV.  Ground one: Sixth and Fourteenth Amendments: Petitioner was denied due process of law when a three-judge panel considered Petitioner's case. The Court failed to perform its statutory duties which it was required to do in this case, which was a capital prosecution.**

In Hughes' first ground for relief, he claims the sentencing Court, composed of three judges, deprived him of procedural due process by failing to examine witnesses and hear evidence as required by O.R.C. § 2945.06, which states in pertinent part, "If the accused pleads guilty of aggravated murder, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly."

To determine whether a constitutional violation of due process has occurred, the court must determine "what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

There is no evidence on the record to support this contention. The three-judge panel, according to the transcripts, heard direct testimony from the parking lot security supervisor, who was also a police officer. They heard that this off duty police officer helped restrain Hughes so

5

that another police officer could formally arrest him. He also testified that eyewitnesses to the shooting pointed to Hughes as the shooter. After Hughes was restrained, the Court heard testimony that the gun used in the shootings fell out of his waistband and he subsequently tried to hide it with his foot while attempting to block the off duty police officer's view.

The prosecution also called the primary investigating officer to the stand and elicited evidence from him that the 9mm handgun which fell from Hughes' waistband fired the bullet casings found at the crime scene. The prosecution also introduced into evidence that the bullet taken from Roberson's body was from the same gun that fell out of Hughes' waistband.

Furthermore, the prosecution introduced the intended victim's statement into evidence along with at least four other eyewitness statements, all identifying Hughes as the shooter. The witness statements also described Hughes pushing the barrel of the gun into Bryant's chest, pulling the trigger but it didn't go off, fumbling with the action of the handgun and walking around the parking lot for two to three minutes, and peeking into cars, which the prosecutor referred to as evidence that Hughes was stalking Bryant.

These facts demonstrate that the three-judge panel heard and evaluated the relevant evidence in the case as required by the Ohio statute, and the Magistrate Judge found accordingly. But Petitioner objects to the Magistrate Judge's finding because the words "appellate court" were used in the Magistrate's Report and Recommendation instead of "three-judge panel" or "trial court." Hughes asserts that, because of this error, the Magistrate Judge "mischaracterizes the record."

This Court recognizes these words were interchanged, but it was a harmless error if read in its entirety. The Magistrate Judge consistently refers to the Court in the correct terms and this

typographical error or, at worst, mischaracterization, does not demonstrate she was confused as to the evidence in the record.

Petitioner next cites *Blakely v. Washington*, 542 U.S. 296 (2004), stating that his "consecutive sentence would now appear to be impacted" by it. In *Blakely*, the premise was a sentence given to Petitioner by the judge above the statutory maximum because he said it was a cruel crime, but the "cruel" element was not found by the jury. *Id.* at 303. Hughes' statement is without merit because *Blakely* is irrelevant to the case at hand. There was no jury in Hughes' case, nor was there a punishment given above the statutory maximum.

Therefore, because Hughes failed to cite to any evidence that the three-judge panel did not perform its statutory duties, Hughes' first ground for relief is dismissed.

V.  **Ground two: Fourteenth Amendment: Petitioner was denied due process of law when his plea of guilty was not knowingly, intelligently and voluntarily entered.**

In his second ground for relief, Hughes claims that his guilty plea was not knowingly, intelligently and voluntarily made because the three-judge panel did not fully explain the law and circumstances to him.

A guilty plea is valid if it was entered knowingly, intelligently and voluntarily. *See, e.g., United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and the likely consequences.")).

As the Magistrate Judge found, the transcript shows that Hughes was told of the charges and specifications to which he was pleading guilty, told of the possible sentences which he might

7

receive upon pleading guilty, and reminded of the sentence which Hughes and the prosecutor had agreed upon in exchange for his plea. Hughes said that he was not under the influence of drugs, alcohol or medication; was satisfied with his representation; was not making his plea due to any promise or duress; was making the plea under his own free will; had discussed the plea with his attorney; and knew the evidence that the state would present against him should he decide to go to trial. The transcript further shows that Hughes had no questions about the plea agreement. The three-judge panel told Hughes of his rights should he choose to go to trial; explained that he was waiving those rights by pleading guilty; described the elements of each charge before accepting his plea and Hughes declared that he understood what the panel had told him.

In Petitioner's Objections and Exceptions, he again points out that the Magistrate Judge incorrectly uses the phrase "the appellate court's procedure" when referring to the panel's procedure and, thus, "mischaracterizes the proceedings." Again, this Court concludes the mischaracterization was harmless error.

Petitioner further objects to the Magistrate Judge's statement that he did not provide any holdings by the Supreme Court to show the procedure in accepting the guilty plea was constitutionally deficient. Petitioner asserts he cited to Supreme Court decisions and to decisions by the Sixth Circuit "which had considered Supreme Court decisions on the subject."

This argument lacks substance. Although Hughes did cite to Supreme Court decisions, they are irrelevant to the case at hand. For instance, Petitioner cites *Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir. 2004). That case was reversed, vacated and remanded by the Supreme Court. *Bradshaw v. Stumpf*, 545 U.S. 175 (2005). Even if it had not been reversed, it is unlikely it would have any effect on the instant case. In *Stumpf*, the crux of Petitioner's argument was he was not

8

informed of an essential element of a crime to which he was pleading guilty. *Stumpf*, 367 F.3d at 600. Although Hughes argues that he was not "properly informed" as to "the elements that had to be proven," the transcript of proceedings reflects the opposite – that Hughes was indeed informed of the elements of every crime to which he pled guilty.

The Court recognizes that Petitioner also cites to several other Sixth Circuit cases (one of which cites to two Supreme Court cases) which found the petitioner in each case did not make a knowing, intelligent and voluntary plea. The Court is not persuaded because they are irrelevant, factually distinct, and not supportive of Hughes' argument.

Petitioner also contends he was not "properly informed as to the duties of the court...." Petitioner does not elaborate and the District Court fails to see where he could have been misinformed. Thus, Petitioner has not given any clear and convincing evidence of this assertion.

Therefore, because Petitioner failed to provide any evidence his plea was not knowingly, intelligently and voluntarily entered, and because the transcripts of the proceedings show his plea was given with sufficient awareness of the relevant circumstances and likely consequences, Hughes' second ground for relief is dismissed.

**VI.     Ground three: Fourteenth Amendment: Petitioner was denied due process of law when the prosecution failed to present sufficient evidence to show prior calculation and design in order to support a conviction for Aggravated Murder.**

In his third and final ground for relief, Hughes asserts the prosecution failed to present sufficient evidence to show prior calculation and design in order to support a conviction for Aggravated Murder.

The Due Process Clause of the Fourteenth Amendment requires a criminal conviction to be based on proof beyond a reasonable doubt as to every element of the crime charged. *In re*

*Winship*, 397 U.S. 358, 363-64 (1970). The test of whether a conviction meets this standard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added).

Aggravated Murder, as charged against Hughes, requires the prosecution to prove he "purposefully, and with prior calculation and design caused the death of another." O.R.C. § 2903.01(A). Even though Hughes intended to shoot Bryant instead of Lindsay or Roberson, his purpose to kill Bryant transferred to the victims. *See, e.g., State v. Solomon*, 66 Ohio St. 2d 214, 218 (1981). Where evidence adduced at trial reveals the presence of sufficient time and opportunity for planning an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated design to kill, a finding by the trier of fact of prior calculation and design is justified. *State v. Cotton*, 56 Ohio St. 2d 8 (1978).

As the Magistrate Judge confirmed, the panel's findings show that on November 3, 2000, Hughes attempted to shoot Bryant in the chest. The gun failed to fire and Bryant ran from Hughes. Hughes then took several minutes to fix his gun and stalk Bryant through the parking lot, peering into cars. Accordingly, there was a break in the encounter, giving Hughes time to reflect and pursue his intended victim. When Hughes found Bryant, Hughes fired nine shots at Bryant, obviously intending to kill Bryant. Hughes' shots hit two men standing near Bryant instead.

Petitioner again cites cases to support his argument. As before, the authorities Petitioner cites are irrelevant and clearly distinguishable from the facts of Petitioner's case. Furthermore,

10

Petitioner's summary of the facts in *Taylor v Mitchell*, 296 F. Supp. 2d 784 (N.D. Ohio 2003) in his Objections and Exceptions are grossly misrepresented; and a reading of the actual facts reveals *Taylor* does not support Petitioner's argument.

Therefore, because Petitioner does not provide any clear and convincing evidence his crime was not committed with prior calculation and design; and the evidence in the case, taken in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find every element of the crime beyond a reasonable doubt and to convict Petitioner of Aggravated Murder, Petitioner's third ground for relief is dismissed.

## CONCLUSION

Based upon the foregoing reasons, and because Petitioner Kenneth Hughes has failed to satisfy his burden by clear and convincing evidence regarding each of his three grounds for relief, the Magistrate Judge's Report and Recommendation is ADOPTED and the Petition for Writ of Habeas Corpus is DENIED. Further, Petitioner has not made a substantial showing of the denial of a constitutional right; therefore, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATE: 9/25/07

CHRISTOPHER A. BOYKO
United States District Judge

FILED
SEP 25 2007
CLERK OF COURTS
U.S. DISTRICT COURT, N.D.O.
CLEVELAND

11